22-39-1, United States v. Benjamin, and we'll wait for counsel to come up to the front of the room. It's way more than one for people to shuffle in. You're losing your audience. All right, thank you very much, Mr. Scott. Good morning, Your Honor, and may it please the court. My name is Hagan Scotton. I'm an assistant United States attorney in the Southern District of New York, and I represent the government in this appeal. The district court erred in reaching a conclusion every circuit court to consider the matter has rejected. As all those courts have held, explicit in McCormick means clear and unambiguous in the terms of the agreement, not stated in express words. And the district court's error is clear for at least three reasons. First, in Evans, the Supreme Court literally said the jury instructions mirroring the allegation in the indictment here satisfy the quid pro quo requirement to McCormick. Second, universal principles of criminal law, long recognized by this court, recognize that criminal agreements can be formed and proven by something other than express statements. And third, the Supreme Court's First Amendment jurisprudence in the campaign contribution context has repeatedly said that the one thing the government can and should prosecute in the campaign contributions area is quid pro quo bribery. Because that is exactly what this indictment alleges. The bribery counts should be tried by a jury. And I'll start on the third point. When I reviewed the First Amendment cases cited by Mr. Benjamin, Cruz, McCutcheon, Citizens United, I count, I tried to count how many times it said the government can pursue quid pro quo bribery. And at least the first two, I stopped at ten. The court has always been clear that that does not chill or infringe First Amendment rights. In the chronology of what happened, when, in the government's view, was this crime completed? Well, so it's going to depend. At what point? It's going to depend on the count, Your Honor. Okay. So for solicitation, because there all that matters is that Mr. Benjamin makes the demand, that has to be complete at the time he demands the campaign contribution. So I think we're talking no later than the meeting at which Mr. McDowell comes with essentially the wrong contributions. And Benjamin says to him, no, the contributions you're supposed to provide are these small dollar ones. And let me remind you of this grant I got you. Now, a jury could conclude it happened even later, because as Your Honor may recall, Benjamin continues to make these demands all the way until essentially the plot comes to an end when it's uncovered. So if any of those demands was a demand for an explicit quid pro quo, Mr. Benjamin is guilty on that count. So you're saying that the solicitation came when Mr. McDowell offered the money and Mr. Benjamin asked that it be delivered in smaller denominations? Well, I'm saying the solicitor here, in my view. That doesn't change by $1, the amount. I think that's correct, Your Honor. Mr. Benjamin makes repeated demands, and any one of them could satisfy McCormick if the jury finds the circumstantial evidence add up to it. Well, any one of them after he delivers the $50,000 grant. The demand to ex ante before he does that would not count. That's correct. And I think Your Honor is right that the very first meeting here at which Benjamin just says you need to contribute to me, and McDowell says I can't, among other reasons, because I need to solicit my contributors for my own charity, and Mr. Benjamin turns around and says let me see what I can do, we're not saying that there is the solicitation. But also I think, Your Honor, that the question that he's getting at is very much a question that can only be assessed after the facts at trial are in. Because in all the cases that Mr. Benjamin cites, that we cite, they're all either jury instructions questions or submissions to the evidence questions. Here all that matters is the indictment alleges an explicit quid pro quo or a demand for an explicit quid pro quo, and that is enough to satisfy McCormick at this stage. Can you talk about McCormick? So in Evans, the dissenters say this quid pro quo requirement is just made up. And the majority responds and says no, it's not made up. It comes from the language in the statute, in the Hobbs Act, that says under color of official right. That's the origin of it. We are not proceeding under the Hobbs – this is not a prosecution for Hobbs Act extortion here. But for some reason everybody agrees that the quid pro quo requirement still applies, even though the Supreme Court has said it comes from the language under color of official right, which doesn't exist in the statute. So why is it that everybody agrees that McCormick and Evans apply here? Is it just because we're worried about criminalizing normal campaign activities? I think there's that principle base, Your Honor, and I'd like to get in a second to why that's not a concern here. Is that why everybody agrees? Because you agree that the statute under which he's being prosecuted does not include the phrase under color of official right. Correct, Your Honor. I think another reason, at least if you look at the substantive counts here, 666 is much more so than 1951. It's a bribery statute, and it much more sort of within its own wording seems to contemplate a this for that. Right, so the statute itself talks about quid pro quo because it talks about getting a benefit in connection with the performance of an official act. And so you wouldn't need to go through the history of extortion under the common law to determine whether a quid pro quo was required or not. Right, which is why it's sort of puzzling that we're focused on McCormick and Evans, which did depend on all of that history. I see that, Your Honor. And also just to sort of complete Your Honor's question, in honest services fraud, although the statute there is odd because it incorporates prior judicial decisions, everyone has taken as a given that the one thing it does apply to is quid pro quo bribery. So that's sort of why it comes in here. But I think the parties have taken as a given, and frankly it's a government concession, that we're going to apply McCormick even under these different statutes to protect the First Amendment. And here's why the First Amendment concerns in McCormick are satisfied here, even if you just look at McCormick. So when McCormick says you need an explicit promise understanding, the first thing it does is turn around and cite the Fifth Circuit's decision in Dozier as sufficiently defining the zone of forbidden conduct. And if you look at that opinion, Your Honor, it recites the facts briefly. It's doing a sufficiency challenge, I think, and then says the implication is clear, literally in those words. That's the one thing the district court says you can never say that. According to the district court, if you are doing campaign contribution bribery, you can never say the implication is clear. That's obviously wrong under all the case law. So you're saying that shows that in McCormick when the court uses the word explicit, it's talking about clear and unambiguous and not expressly stated. Is that the idea? That's the idea, Your Honor. And I guess if the reason why we're applying McCormick in the first place is because of this concern about criminalizing normal campaign activity, I don't know if clearly stated actually protects that. So in the hypothetical, let's say it's not an exchange for a grant, but let's say the donor wanted the candidate to support high quality public education. And the candidate or official says, I will do that. I will support those issues if you support my campaign. Would you consider that to be – and then they make a donation and he votes for that policy. Would you consider that to be bribery? No, Your Honor. But that would be explicit, right, in the sense of expressly stated, right, because they would have actually said, I'm going to support this issue because you're supporting me. But why wouldn't that count and why does this count? So I think your hypothetical is great, Your Honor, bringing out the distinction here. It's the explicitness, as in the clarity and the specificity that does all the work. Your Honor gave an express example. It literally says what it will do that I think Your Honor is correct is protected by the First Amendment. So expressness is not doing any First Amendment work there. What does the work? The reason Your Honor's hypothetical would be protected is because it doesn't specify an official act. That's another thing the government has conceded. But it does specify an official act because he's going to vote for the policy of high quality public education, right? So, Your Honor, I think if you look, for example, at this court's decision in Silver, maybe, maybe if he ties it to voting that might qualify under an as opportunities arise theory. But it's not going to do the job here. Oh, I get it. So I get what you're saying. It's not clear what the official act is in my hypothetical. But let's say it was pretty clear. Let's say it's a particular piece of legislation. It's some kind of bill about public education. And the donor has reason to believe that the candidate supports it anyway, I guess. But he comes up and says, I'll support your campaign if you vote for this bill. And he says, well, I'll vote for that bill if you support my campaign. And then he gets a donation. Does that count? Correct, Your Honor. So if they actually forge an agreement in which I will give – he's selling his vote. I will give you my vote. Even if it's just voting on legislation? If it is a vote in exchange for a contribution, right? If it's I will give you the vote you're asking for. It actually doesn't make a difference here in this case that what we're talking about is the delivery of public funds to a donor's nonprofit. If he had just decided, like, I'm going to vote on a particular issue in a certain way, you would still say that that was bribery. Well, I don't think I would say if he decided he was going to vote that way. I think I would say if he agreed to vote that way in return for a contribution. So he could decide he wants to vote that way for a million reasons, including, to be clear, that he thinks he's going to get more campaign contributions if he takes exposition. Would it be a defense if he said, well, I was going to vote that way anyway. I just was speaking loosely with a donor about what I plan to do? Well, if he truly was speaking loosely, that is, if he didn't mean to propose an agreement, then no. It wouldn't be a defense. The mens rea would not be satisfied. If, on the other hand, what he meant to do was tell the donor, if you give me these contributions, I will vote for your legislation, then it's a crime. And Silver, by the way, at least for honest services fraud, says it doesn't matter if he's lying to the donor. As long as he's trying to get the donor to give him the money in exchange for this explicit promise. So then doesn't that I mean, isn't that normal campaign activity that people say I'm going to make a donation to your campaign? You're going to support the policy agenda that I agree with. I mean, isn't that what McCormick talks about? It's just being normal politics. It is. And it's protected. And it's no way at issue in this case. Because, again, policy agenda. I think everyone agrees. If you even if the policy agenda is I'm going to vote for this series of bills. You can say that. You can say it for the purpose of attracting campaign contributions. You can say everybody vote for me. I'm going to support the Build Back Better Act. Everybody contribute to my candidate says, please vote for me. I'm going to support the Build Back Better bill. That's OK. Yes. But if he says, if you support me, I'll vote for the Build Back Better bill. That's a crime. No, because if you support me, it's also not specific and express. If he says to a specific donor. Give me a donation. Oh, I see. So you're saying actually it has to be pretty, pretty clear that what he's talking about is I'm doing it because of the money being exchanged. Exactly, Your Honor. And that's what the jury is going to have to find in this case. How do you instruct the jury on that point? So I understand how you would instruct the jury if the requirement is that it needs to be expressly stated. But how do you instruct the jury on this question about it being clear to everyone that there really is a quid pro quo? So, Your Honor, we'd be happy to have the jury instructions. McCormick approved a dozier. We'd be happy to have the jury instructions. Evans approved. We'd be happy to have the jury instructions in any of these other circuit cases that uniformly, by the way, 21-0, they're all unanimous opinions, say this is the correct standard. If the jury was just told, for example, in order to find that it – well, first, we would not object to the precatory language the Supreme Court says. It says, you know, can't – can't contributions are presumptively lawful. You cannot find a bribe just because someone took a contribution and then later acted favorably. But you can find one, and I'm kind of here paraphrasing the instruction approved in Evans. But you can find one where the donor explicitly agrees to exchange a specific official act for a specific campaign contribution. It sounds like you're saying that what you need is something that would be an enforceable contract if it were not illegal. It is of that level of clarity, Your Honor. The only reason I resist the contract hypothetical is it is in the contract realm there are – which is the civil realm, of course – these weird rules sometimes about things having to be in writing or in expressed words. And that's very much what we're saying doesn't have to be the case here. I think we can do without the writing. That's great, Your Honor. That gets us a long way there. And in – Can I ask this question? So in Evans, the defendant said that he was getting a campaign contribution, but the jury apparently decided it was not a real campaign contribution. Correct. Or most of it. Do we have an allegation like that here? So he's getting donations in the form of campaign contributions, but there are these allegations that they're actually not made by the people that it was purported to be made by, and it was being reimbursed by McDowell and all of that. So would it be possible for the jury to decide in this case that these were not bona fide campaign contributions, or do you agree that they are? I don't think it would be in the same way that it seems to – or at least my opponent has suggested it was an issue in Evans, that these were just straight cash bribes. I don't think there's any dispute here that Mr. Benjamin intended to spend this money on his campaign as opposed to put it in his pocket or buy a car. Where it matters, all this illegality in the contributions really helps prove the men's ray. And if I could play out the facts a little bit here, the essence of the bargain here really puts to rest any concerns about Chile. What happens when McDowell says, I can't really get you contributions because, among other reasons, my contributors are dedicated to my charity, is Benjamin says, over the course of months, I can fix that. Here's $50,000 for your charity. Now you're free to contribute to me, which McDowell does, which, by the way, Benjamin then amplifies in part through the matching programs. What Benjamin did here is find a way to fund his campaign using a taxpayer grant to McDowell to sort of wash the money. That doesn't look anything like these sort of legitimate cases. And the jury can certainly consider that as circumstantial evidence of men's ray, but this isn't a case where the campaign contributions aren't going to the campaign. The problem is he's essentially taking state funds, filtering them, and using them for his campaign. So just to hit a couple quick points on that, if I can, Your Honor. The one other thing I want to draw the court's attention to in McCormick, in addition to the Dozer example, if you look at footnote five, Your Honor, where the court is paraphrasing the holdings of the district court and the court of appeals that it is rejecting, it says the following. The trial court and the court of appeals were of the view that it was unnecessary to prove that in exchange for a campaign contribution, the official specifically promised to perform or not to perform an act incident to this office. And I'm focused there on specifically. It's another indicator that what McCormick was getting at was specificity, not expressness. And then I suppose the final point. Well, haven't we said, you know, we have used the word express. You just said that McCormick's not getting an express, but we've used the word express to characterize McCormick. So you're just saying we should decide that our prior characterizations of McCormick and Evans were dicta and we can disregard them, right? That's your position? That's correct, Your Honor. I looked at every judgment. So you're saying there's no way to reconcile the way we described McCormick and Evans in Garcia and Gannon with your position in this case. So we need to discard those cases. You certainly don't need to discard those cases. Those statements in those cases. No, Your Honor. I think there's actually only a very narrow point on which we have an issue with the dicta. First, this Court can follow the First and the Ninth Circuits and the other circuits that don't apply Evans in the campaign contribution context, yet still reach exactly the holding we urge here. So keeping Evans out of campaign contributions doesn't hurt our case at all. Second, there's nothing wrong with Gannon and Garcia saying we're not going to consider McCormick in the as-opportunities rise order. We're fine with that. And that was really the point of what both those opinions were getting at. That doesn't impair our position at all. So you agree that in the context of campaign contributions, you can't have an as-opportunities-arise bribery, but you could outside the context of campaign contributions? Well, you certainly can outside, Your Honor, a holding of silver that even after McDonnell that survives. This isn't the case to look at what as-opportunities-arise would look in the contribution context. One of your arguments for, you know, reading into the – giving meaning to the word explicit in McCormick is it excludes as-opportunities-arise in the campaign context. So you are making that argument, right? I think here's – So do you – Yes. So your position seems to be you can't have as-opportunities-arise bribery in the campaign contribution context. I think it would be extremely difficult. The reason I'm hesitant to say yes is not just it's not the issue in this case, and I can explain. What as-opportunities-arise says is essentially you get a little flexibility – a little, not much anymore – on what the official act is. And we're saying there isn't that flexibility here. So, right, those are hard to reconcile. So you are saying it's different. The statute doesn't make that distinction, right? The statute 666 doesn't distinguish between campaign contribution cases and non-campaign contribution cases, right? That's right. So what's the source of this distinction? Is it a constitutional avoidance problem? Is that what you're talking about? I think that is a good way to read McCormick. And if Your Honor remembers Justice Scalia's concurrence in McCormick, he sort of says this is weird and atextual, but I'm still going to concur because it's a good idea to protect First Amendment issues. So I think that is what was going on there. In the as-opportunities-arise area, there is that flexibility. The only hesitance I have is if you look at Judge Sutton's opinion in Terry, he seemed to be applying an as-opportunities-arise type theory in a campaign contribution case. That's not this case. That was a very different case. Here we have a specific quid for a specific quo. It's alleged in the indictment. The grand jury reviewed the evidence put before it and said there is probable cause to believe that is what happened here. And under the precedent of this Court and any court to have looked at the question, it should go to trial before a jury, after which this Court can look at jury instruction, sufficiency, and all of those things. Okay. Thank you very much, Mr. Scott. You reserved time for a little, so we'll hear from you again. But let's turn to the appellee, Mr. Burke. Good morning, Your Honors. Barry Burke for defendant, appellee, former state senator, former lieutenant governor, Brian Benjamin. Your Honors, I submit this is the case that the Supreme Court was concerned about in McCormick and giving a warning about. The prosecution wants to talk about the quids and the quos. But it is the pro that matters under McCormick, its progeny in the First Amendment, and it must be an explicit agreement. As Judge Banasch was laying out, it has to be that way because every day elected officials like Mr. Benjamin receive quids in terms of campaign contributions. And every day some of their constituents and supporters receive quos in terms of benefits they perceive from that elected official's positions, decisions, or legislation. And therefore, what is critical, as McCormick has said, and I would submit all the courts have said, is that when it's solely campaign contribution, there must be an explicit agreement. And the prosecution seeks to elide that distinction and wants to describe a standard for bribery charges based on campaign contributions using essentially the same standard when there are bribery charges based on bags of cash, fancy jewelry, or other personal benefits, or cases that combine the two, which will matter as I'll get to. That can't be- Can I ask again the same question I asked before? Yeah, of course. Where does that come from? So like I said before, McCormick is based on the language under color of official right in the Hobbs Act. We don't have that language in the statute here. So it's a constitutional avoidance problem. That's where we get the idea that McCormick has to be overlaid on top of the statute. I agree, Your Honor. And I think if you look at McCormick, obviously- I think it would be unconstitutional unless there was an expressly stated quid pro quo. I think it would violate the dictates of McCormick and the First Amendment. Yes, Your Honor. And Your Honor, can I make a point? While the prosecution serves what I would call a fancy word salad by pulling out lines of different cases, the reality is this prosecution is exceptional. And why are campaign contributions different? So if it's about the First Amendment, the campaign contributions are different. Why? Because you're protecting the right of the donor to make the campaign contribution? Because it is political speech, and the First Amendment encompasses both the opportunity for supporters to support- Well, political speech is the same on the part of the official in both cases, whether he's doing something in exchange for a campaign contribution or some other amount of money, right? So his speech is implicated to the same extent in both cases. So why are campaign contributions different from other forms of inducement? Because as McCormick explained, and I think the prosecution oversimplifies the problem, yes, McCormick deals with the First Amendment, but they explain when there's actually an illegal agreement, an illegal agreement, a corrupt relationship, which I'll speak to, then that's an exception that is not raised First Amendment questions. But they define what that is because it's so important. And future subsequent cases have emphasized how important it is to allow public officials to do exactly what we talked about, have quids and quos. And if I can, not only- My hypothetical that I pose to Mr. Scott, so if a donor says, I want you to support strong, high-quality public education, and he says, well, I will support high-quality public education if you contribute to my campaign, that's an explicit agreement. Would that violate the statutes? If it is, if a specific quid is based on a specific quo, now the issue- But it might mean that it's not a specific quid and quo. So if he says, I will vote for the Inflation Reduction Act if you contribute to my campaign, would that be criminal? Your Honor, it's good. If he says, I will only support that act if you provide me campaign contributions. If you don't, I won't support it, then you'd have an argument that's explicit. There's no case like that. Because you can imagine, every single day, a conversation like that happens. Where a public official, West Virginia Senator, says to a fighting dealer, I support it- What's weird about your proposed test, actually, is I think most people would have the intuition that it's more problematic if an official is talking about supporting legislation, and that might be bribery than in this case, where he's transferring public funds to the organization run by an important donor. I mean, does that implicate political activity less? Your Honor, I- The hypothetical you agreed might be actionable? Your Honor, I don't believe the characterization of the prosecution actually captures the allegations. The monies that unexpectedly became available were to support a non-profit in the education space. The non-profit was a legitimate organization that supported Harlem students in Mr. Benjamin's district, that he supported. There was nothing improper about it. It was very much a legitimate non-profit. And, Your Honor, I would say there have- Not only have there been no campaign contribution prosecutions in this district, but since McCormick, 30 plus years, there have been only four prosecutions based solely on campaign contributions. And they matter, because the sort of cases that the prosecution cites to and relies on, those have other benefits, other things that may clear a stream of benefits, as the court said in U.S. v. Davis in the Third Circuit, that show the explicit agreement, the impropriety. And, Terry, that was just mentioned. So, in this case, if Mr. Benjamin, instead of saying, let me see what I can do, had said, well, I think I can transfer public funds to your non-profit to free you up to fundraise for my campaign, and if I do that, I expect you to then get donations for me. You need- Then it would be actionable. You need something that's an agreement. Exactly, Your Honor. And, Your Honor, Your Honor takes the point. So, you're saying he has to see that expressly? No, not necessarily. But let me just say this. To your good question, what the prosecution says was the agreement was no agreement at all. Not at all. After the grant, the allocation was already applied for, after the supporter was told about it and expressed surprise, he then said, by the way, I'm running for city comptroller. You supported my Senate campaign. As I mentioned before, you're a longtime supporter of me, and he is. But he was in a position to withdraw the grant. There is no allegation that was ever discussed. It was never threatened. It was never raised. There was never an allegation. These are very detailed, 14-plus allegations that the prosecution decided and has described as something that detailed specifications of the crimes charge as well as the prosecution's theory. There was never any discussion, and it cannot be, I would submit, Your Honor, that it is simply enough to talk about contributions at the same time there's some sort of benefit for the giver. That can't be the case. And if I could go to, Your Honor, join the decision written by Judge Sotomayor in the Ganim case, which reflected 30 years of recognition by this court that there has to be a distinction, and there is a distinction between McCormick and Evans. And I think the point, and it's been repeated, and in Ganim it mattered because the Bridgeport mayor was saying that a opportunities arise prosecution can't work because I get the benefit of McCormick. And the court had to decide no, McCormick is solely campaign contributions, Evans is what applies, and it's a different standard. So it wasn't dicta at all, and it's been followed not only by this court for 30 years and Rosen and Silver, but by the prosecution. It wasn't dicta because the two cases had to be distinguished in order to arrive at the result. Exactly. And Mr. Ganim was relying on the McCormick decision. And it is critical in looking at these cases that the prosecution, they agree that it has to be at minimum a clear and unambiguous agreement. And there is no agreement alleged here. So you're saying that even if we were to agree with the government that it just needs to be clear and unambiguous and not necessarily expressly stated, this still wouldn't meet that requirement? That's exactly correct. So why don't you explain that? So, and if I could just say, in the Evans case, just again step back what these cases were about, there's an undercover FBI agent who recorded the city councilman saying, I want $7,000 of cash. Oh, and by the way, give me another $1,000, I'll call it a campaign contribution. These are very different cases from a pure campaign contribution case. If you look at the only four cases that exist that were pure campaign contribution cases, each one had explicit promises. In this case, in all the cases that have a different standard than the Second Circuit, and the First and the Ninth recognize the same distinction we're talking about, while the prosecution pulls out sentences, if you look at every one of those decisions, Carpenter, Izunza, Seligman, and Allison, they all clearly talk about explicit promises. But there must be some, I mean, if, you know, in this case, the temporal proximity was closer. Let's say he's sitting in the room with Mr. Migdal. He says, I want campaign contributions. Migdal says, I can't do it because it will take away from donations to my nonprofit. And then Benjamin just presses a button on his phone, and money is transferred to the nonprofit. And then he turns to Migdal, and he says, well, now can I have contributions? He wouldn't have said an explicit thing, but it's pretty clear to everybody what's going on, right? Judge, I would say that then you're in a much murkier area, but you don't even have those allegations here. You're in a murkier area, but you've said that it has to be an explicit statement. So in my hypothetical, there's no explicit statement. There's just temporal proximity of the actions. I would say the district judge had it right. There has to be a link between the contribution and the public act. It has to be more than an implication because implied is the opposite of explicit. So in my hypothetical, would that violate the statute or not? I don't believe your hypothetical would violate the statute. So you could do that. You could say, oh, you're worried about your nonprofit. I've just transferred $50,000 to your nonprofit. Now I'd like contributions. Conversations like that can happen all the time. If you had someone say, I will only get you, I will get you a $50,000 grant, but you have to give me contributions. If you look at every one of the cases, and there are only four that are pure campaign contribution cases, each one had explicit promises like that. Carpenter in the Ninth Circuit, how much would it cost to change the state law? It'll cost you $20,000. And the state senator says, and then I'll change it. He gave $20,000, very explicit. So just to go back to your argument about why, even if it doesn't have to be expressly stated, the senator still wouldn't be met here. Why is that? Because he just was going to make the donation anyway. There is no allegation. This is a longtime supporter, as is alleged in the indictment, accepting all the allegations as true. And the prosecution can't identify a date of an agreement to say that the date is after the grant was obtained, there's a contribution to a state senate campaign which the supporter had regularly supported, and Mr. Benjamin reminds him that he's now running for city comptroller and would like small donations that are matched, and would you give them a request for contributions? That is all. That cannot be an agreement under any standard, and there's no case that even comes close to that. And if that were able to be prosecuted based on that allegation, then any public official who has conversations with their supporters who benefit from their legislation, I support an oil pipeline, and you'd have to support me for me to keep supporting it. Those conversations happen all the time, and there's a reason why there have been so few prosecutions based solely on campaign contributions. Can I go back to the McCormick and Evans distinction? So I get that we have said in the subsequent cases that they're different or different standards, but if you were just reading McCormick and Evans, would you reach that conclusion? I mean, the language in Evans is we're extending the McCormick quid pro quo requirement to non-campaign contribution cases. The allegations here meet the McCormick quid pro quo requirement. It just sounds like the court is talking about a consistent standard across cases, doesn't it? I would note the distinction, Your Honor. A couple things about it. First, McCormick was decided a year and three days earlier, the exact same justices. They don't mention in any way that they're overturning, modifying McCormick. It is highly unlikely they did sub salientio. So wouldn't that mean that they think it's all consistent? So if a reading is available that harmonizes the two and they haven't said they're overturning or modifying anything else, is it the natural reading that actually they're totally consistent? Actually, I believe the law supports that if they don't say they're overturning or changing it, you look to McCormick as being something different. You're proceeding from the assumption that McCormick set up a different standard from Evans. But I have two interpretations of McCormick available. One that is consistent, McCormick and Evans apply the same standard, and one in which they're different. And if you read Evans, it does not seem like the court is talking about applying a different standard than it did in McCormick. It cites McCormick and says we're applying the McCormick quid pro quo standard. I'd make three points because I do think Judge Kennedy's concurrence that everyone relies on says at the end, so people should be aware that we are extending the McCormick quid pro quo to both from campaign contributions to also bribes involving cash and personal benefits, which McCormick specifically passed on. That's right. So McCormick says we're only deciding this in the context of campaign contributions. We're reserving judgment on other kinds of cases. And then Kennedy says, all right, now we're applying McCormick to all kinds of cases. So that's just applying McCormick. It's not changing. Well, I would say that what they're extending is the quid pro quo requirement, as this court has found for 30 years. And it made sense because if you look at the majority decision, it was focused on the cash portion. And as I said, recorded conversations of the cash. The jury found that it was cash, as the government admitted in saying that's why they convicted for the tax evasion point. And beyond that, there's no mention of the First Amendment. There's no mention of all the concerns emanating and persuading the court a year and three days earlier that they needed to have a higher standard. And, Judge, I would say again, I think the proof is in the pudding. If you look at the cases that the prosecution relies on, the reason why there are so few, so rare to have a campaign contribution alone case is because it would make it virtually impossible to determine what is appropriate and what is not appropriate for our elected officials, as the amicus made clear in their brief. And, Judge, if you look at the analysis in Ganim, Judge Sotomayor and Judge Jacobs' decision in that case, you look at what followed, you look at the government's own position, all the briefs they've ever submitted before this court prior to this case on this issue, they agree there is a distinction. And even the circuits that say the Evans did in some way affect McCormick, they all recognize that campaign contributions have to be treated differently. They have to. And yet the prosecution doesn't provide what that difference would be. So, for example, the essential element that needed to be alleged is that it's an explicit agreement. And simply saying an exchange for can't be sufficient, because that would satisfy the quid pro requirement in a non-campaign contributions case. You need more, especially with constitutional rights like first amendment. Instead of saying an exchange for, the indictment would have to say under an express agreement to- Explicit. Express condition. Or it would have to, I guess it would have to allege that somebody stated something expressly to make the deal, right? They would, for the element point, they would just have to say that was an explicit agreement to exchange the quid for the quote. And I would say beyond that, though, the prosecution in this case decided, and they've described it as a 14-plus page indictment that lays out with specificity the crimes charged in their theories. Looking at that, and again, the prosecution today cannot point to an explicit agreement in the allegations. There's no dispute what those facts are. And simply asking for additional campaign contributions for a different race without in any way linking it up to any act by the supporter can't be an explicit agreement. Do you agree? So I understand your think that there's this risk, but like in this particular case, do you think a jury could conclude that when he said let me see what I could do and transfer the money and then ask for contributions, he was doing it in exchange for the contribution? The reason he made the grant is to get the contributions? I believe that no jury could rationally find that that is an explicit agreement as required. The risk is, though, if explicit is defined as its opposite, as the prosecution suggests, as an implication which can't be right, the jury can make that determination. So you think the jury can't reach that conclusion? But if it's put to the jury and the jury's instructed that there has to be, you know, a clear and unambiguous quid pro quo where everyone understood that one thing wasn't exchanged for the other thing, why wouldn't that be sufficient to guard normal political activity? It wouldn't be sufficient because if the prosecution can't even allege it in the indictment what the agreement is, they are then able to prosecute cases in which they have nothing to suggest the sort of corruption. But you're saying we need to have the expressly stated requirement in order to safeguard normal political activity. And I'm saying, well, if the jury is just told you can't convict unless everybody, all the parties in this transaction understood that the grant was being made in exchange for contributions, the contributions were being made in exchange for the grant, why wouldn't that limitation be enough to safeguard normal political activity? I have two answers for that. One, first, you have to have the grand jury who found this critical element. All the elements of the offense must be found with the grand jury to make sure that they determine, particularly with First Amendment rights at issue, that this, in fact, was an explicit agreement as required to allege a quid pro quo. Second, in a case like this where the prosecution has admitted that they chose to file a very extensive indictment, laying out all the allegations over many pages that they've described as laying out the specifics of the crime, if those specifics do not make out an explicit agreement, the court is obligated to dismiss the case as they did. And, again, the prosecution may have included that sort of charge because it was 67 days before an election where Mr. Benjamin was on the ballot as lieutenant governor and they, one, thought that there was a public reason to do that. Whatever reason, there are consequences. And once they do that, if those allegations, which they say are detailed and lay out the crime, don't make out the crime as required under McCormick and its progeny, then a dismissal was appropriate. So the district court was correct in its analysis that the allegation, which the prosecution still struggles to identify as having an actual explicit agreement, requires dismissal. And I would submit that the description of the agreement by the prosecution here reaffirms the decision because if that alone, a request for contributions after a constituent thinks that they benefited from some action, can satisfy the quid pro quo corruption requirement, then there's no limit to the sort of cases any prosecutor can bring. And as the amicus- I think we have that argument, Mr. Burke. Thank you very much. Thank you, Your Honors. Let's turn back to the government on rebuttal. Thank you, Your Honor. A couple points. First, I think, Your Honor, Judge Mnuchin was exactly right when he said, why aren't jury instructions the correct protection here? That's why these are all jury instruction cases. And I particularly like what Citizens United said here. Citizens United said, even while protecting other forms of campaign contributions, application of the quid pro quo- sorry, application of the bribery laws would be appropriate if a quid pro quo is proven. We're supposed to prove it. We will prove it. Mr. Burke suggested we can't prove it, and frankly, by a lot of mischaracterizations of the record. All those things he said the government say, they didn't say. In one case, he was even quoting himself. Something he said. You can look at docket number 44 where this clearly lays out. That's Mr. Burke quoting himself. In fact, the government was very clear this indictment does not contain all the facts. It would prove at trial. And this Court has said, in cases such as Dawkins, that you don't get to take a speaking indictment and turn it into a full proffer of the government's evidence. That's a holding of Dawkins. Mr. Burke is just saying throw that out. Speaking of holdings, I wanted to answer Judge Jacobs' brief question about the Ganim dicta or not. And I think what Your Honor said was the Court had to distinguish those cases to proceed, and therefore perhaps it's a holding. I was asking that as a question. Yes, Your Honor. I think that sort of only gets Mr. Burke halfway there. It did distinguish McCormick.  That's why anything commenting on how McCormick would apply in the hypothetical case not before the Court is dicta. Mr. Burke. We have this argument about whether it's dicta or not, but isn't it also that Ganim doesn't necessarily apply here because Ganim was talking about the Hobbs Act extortion statute, and here we're talking about the bribery statute. And so if we're applying Ganim to this case, it would only be by analogy. It doesn't directly apply, right? I think that's right, Your Honor. I don't actually remember all of the charges in Ganim. Your Honor could also say Ganim was a jury instructions case, so it tells nothing about dismissing an indictment. We need to see the proof here, and we need to see the instructions here. Another thing Mr. Burke is just flat wrong about is the idea that other cases don't look like this. And there's some misdescription of them. For example, he cites Terry as this case in which there is an express quid pro quo, but the language he cites, there's no expressness at all in the pro. It's pretty galling language because the contributor there just tells a state-elected judge how to decide a case, and that's bad circumstantial evidence, but there's no pro at all. That's the quo, right? You're going to decide this case the way I tell you. The agreement in Terry was entirely inferred. There weren't even the sort of subtle verbal cues you have here, and that's why Judge Sutton says at page 615 of his opinion it had to be inferred. You say the same thing in Siegelman. In his brief, Mr. Benjamin unfortunately portrays that as a case in which it's an express quid pro quo. He's cobbling together a bunch of different stuff. What the governor, the defendant in that case, actually said was, you have to give me $500,000 in campaign contributions to make it right because you donated $350,000 to my opponent. Maybe bare-knuckle politics, but his First Amendment protected. Then there's a bunch of exchanges between lobbyists and third parties in which they talk about will this get the guy a seat on the board, and eventually a year later, so a much more extended timeline than here, the governor says, somebody asks the governor, what is he expecting from that? And the governor says, a seat on the board. The guy says, is that going to be a problem? I don't think so. You're inferring it. All these cases use the word infer. These cases are very rare because they're very hard to prove. But what your honors have here is literally the counterparty to a bribery agreement saying, hey, I entered a bribery agreement with this politician where he gave me $50,000 in state money and I turned around and gave it back to him. The idea that there wouldn't be a trial on that is absurd, and that is why what the indictment does allege is this. Benjamin participated in a scheme to obtain campaign contributions from McDowell in exchange for Benjamin's agreement to use and actual use of his official authority to obtain a $50,000 grant of state funds. That is an explicit quid pro quo, frankly, for reasons I think Mr. Burke started to acknowledge. It's explicit because it says agreement. It doesn't say encouragement, expectation, hope, and it specifies exactly what the official action is, $50,000 to Mr. McDowell's organization. That is the kind of case that's tried everywhere in the country. It should be tried under proper jury instructions, but if we prove those allegations, we've proven an explicit quid pro quo. All right. Thank you very much, Mr. Scotton. Thank you.